[Cite as *Ham v. Ham*, 2009-Ohio-3668.]

**IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
WYANDOT COUNTY**

**DANIEL G. HAM,**

     **PLAINTIFF-APPELLEE,**          **CASE NO. 16-09-04**

     **v.**

**DARLA HAM,**                   **O P I N I O N**

     **DEFENDANT-APPELLANT.**

**Appeal from Wyandot County Common Pleas Court
Domestic Relations Division
Trial Court No. 05DR122**

**Judgment Affirmed**

**Date of Decision:   July 27, 2009**

**APPEARANCES:**

     *J. C. Ratliff and Jon L. Jenson* **for Appellant**

     *Dennis E. Pfeifer* **for Appellee**

**ROGERS, J.**

{¶1} Defendant-Appellant, Darla Ham, appeals the judgment of the Wyandot County Court of Common Pleas finding her in contempt of court for failing to provide Plaintiff-Appellee, Daniel Ham, with keys to a camper and several vehicles Daniel was awarded pursuant to the parties' divorce decree; for causing damage to the camper; and, for failing to provide Daniel with various tools he was awarded pursuant to the divorce decree. On appeal, Darla argues that the trial court erred in finding her in contempt of court because Daniel failed to establish that she violated the trial court's order by clear and convincing evidence. Based upon the following, we affirm the judgment of the trial court.

{¶2} Daniel and Darla were married in 1998. In October 2005, Daniel filed a complaint for divorce and voluntarily vacated the marital residence located at 18205 County Road 96 in Upper Sandusky, Wyandot County ("the residence"). In December 2005, the trial court granted an order restraining both parties from dissipating the parties' assets, properties, and funds, and granting Darla exclusive use of the residence.

{¶3} On January 10, 2007, Darla and Daniel were divorced pursuant to a final judgment entry decree of divorce. The decree provided, in part, that Daniel was awarded "equipment and personal property in the semi trailer." (Jan. 10, 2007 Decree, p. 4). Attached to the decree was an appraisal of the Hams' property,

including an appraisal of property inside the semi-trailer, specifically including a tool chest, drill press, AC 295 welder, Makita grinder, and parts washer.

**{¶4}** Neither party appealed from the January 10, 2007 final judgment; however, on January 19, 2007, Darla filed a motion to vacate the final judgment pursuant to Civ.R. 60(B), which the trial court denied. Thereafter, on January 31, 2007, Darla filed a motion for reconsideration of the trial court's denial of her Civ.R. 60(B) motion. Subsequently, in February 2007, the trial court purported to grant Darla's motion for reconsideration, vacate the final judgment entry decree of divorce, and grant Darla leave to object to the magistrate's decision. In May 2007, the trial court overruled Darla's objections and issued a second final judgment entry decree of divorce, from which Darla and Daniel both appealed.

**{¶5}** In March 2008, this Court dismissed Darla's and Daniel's appeals, finding that the rules of civil procedure did not authorize the trial court to grant Darla's motion for reconsideration. See *Ham v. Ham*, 3d Dist. No. 16-07-04, 2008-Ohio-828. Additionally, this Court found that the trial court should vacate its February 2007 order granting her motion for reconsideration as well as the May 2007 judgment entry decree of divorce. Shortly thereafter, the trial court vacated its February 2007 order and the May 2007 decree of divorce.

**{¶6}** In May 2008, Daniel moved the trial court for an order directing Darla to show cause why she should not be held in contempt for failing to comply

with its January 10, 2007 order, claiming that she refused to (1) provide him with keys to a camper, four-wheeler, one-ton truck, and GMC Sierra truck; (2) transfer titles to the camper and four-wheeler from her name to his; and, (3) make available various items of personal property, which he alleged she hid or removed from the residence.

{¶7} In July 2008, Darla moved the trial court to find Daniel in contempt for failing to comply with its January 10, 2007 order for removing certain items of her personal property.

{¶8} In August 2008, the trial court held a hearing on both motions for contempt before a magistrate, at which the following testimony was heard.

{¶9} Darla testified that she was awarded the residence in the divorce; that, on January 15, 2007, someone broke into the residence by kicking in the door and "robbed" her; and, that she believed it was Daniel who broke into the residence. Darla then testified that, within the same time frame of the robbery, someone killed her chickens and dogs, and insinuated that Daniel was responsible. However, Darla then admitted that the police officer investigating the incident concluded that a raccoon killed the chickens. Additionally, Darla first testified that she had not filed a claim against a dog food company claiming that tainted dog food caused her dogs' death, but then admitted that she did file such a claim.

{¶10} Concerning the keys at issue, Darla testified that she never provided Daniel with keys to the camper, four-wheeler, one-ton truck, and GMC Sierra because she did not have possession of the keys at the time the divorce was initiated, and that she never saw any of the keys after Daniel left and filed for divorce, which was in October 2005. However, Darla then testified that she rode the four-wheeler several times in 2006 with her boyfriend, Jeremy Frisch, prior to Daniel coming into the residence to retrieve his property, and that she believed Daniel or his acquaintances may have taken the keys after coming to the residence to retrieve his property. Additionally, Darla testified that she was able to access the camper because it was not locked, and that she did not know how it later became locked because she did not have the key.

{¶11} Concerning the titles at issue, Darla testified that she never transferred titles to the camper or four-wheeler to Daniel; that she did not know where the original titles were, and she did not have them; that she turned the original titles over to her first trial attorney, who copied them, and she had not seen them since; that her first trial attorney returned all of her papers, but the original titles were not with them; that her second trial attorney only had copies of the titles; that she never inquired of her trial attorneys whether they still had the original titles; and, that she had taken no action to obtain duplicate titles because she did not know how.

{¶12} Regarding the camper, Darla testified that she removed the microwave from the camper and her son removed the faucet from the camper prior to Daniel filing for divorce because the faucet in the house was bad. However, Darla later testified that she directed her son to remove the faucet from the camper because the camper was damaged due to the pipes freezing. Darla then testified that she noticed the camper was gone on January 19 or 20, 2007, and reported it as stolen to the police, even though Daniel had been awarded it in the divorce decree of January 10, 2007; and, that some of her personal belongings were in the camper when Daniel took it.

{¶13} Regarding Daniel's tools, Darla testified that, to her knowledge, she gave Daniel everything he was awarded in the divorce decree; that she believed Daniel came to the residence on at least five occasions to retrieve his property; that she did not recall if any of the tools Daniel was awarded were still present at the residence after the divorce was filed and while she was dating Jeremy Frisch; that some of the items Daniel claimed he had been unable to retrieve were still sitting in the yard of the residence; that she hired Bob Culver to do construction on the residence soon after she was awarded it by the final divorce decree; and, that, to her knowledge, none of the property Daniel claimed he had been unable to retrieve was in the home while Culver was doing construction because he had already retrieved his property.

{¶14} Regarding Daniel's property in the semi-trailer parked at the residence, Darla testified that she never had property moved from the trailer to the house or from the house to the trailer. However, Darla then testified that, while Culver was doing construction on the residence, from October until December 2007, she directed him to move property from the house into the semi-trailer; that Culver did most of the moving, so she did not know what was moved into the trailer, except for several bags of "garage sale" clothing. Additionally, Darla testified that she did not check the trailer to see what was in it until the break-in at the residence, in January 2007; that, when she checked the trailer at that time, she saw that it was nearly empty; that she never put a lock on the semi-trailer or removed a lock; that she did not know how the lock was broken off from the trailer or how the trailer was emptied; and, that she did not know who emptied the trailer or removed the lock.

{¶15} Lee Newman, Darla's boyfriend at the time of the hearing, testified that, in January 2007, Darla contacted him and told him that someone had kicked in the door to the residence and some of her property was missing; that her brother-in-law was at the residence fixing the door; that the house looked like "it had been gone through" and some property was missing; that, when he began seeing Darla in September 2006, the only tools he observed at the residence were a

saw and a drill; that he had not been through the entire house; and, that Darla never told him that she was not going to let Daniel take his property.

**{¶16}** Jeremy Frisch testified that he dated Darla from January 2006 until July 2006; that he was at the residence nearly every day during that time period; that, during this time, he saw tools, power tools, construction tools, and a power washer at the residence; that he did not believe the tools were related to any construction going on at the residence during his relationship with Darla because he never saw any contractors; that Darla told him things during their relationship such as "that she wasn't gonna [sic] give [Daniel] that" (hearing tr., p. 51); that he believed "that" referred to "whatever they discussed on the phone. Like, if it was about getting the rest of his items or he – he claimed there was more clothes there for him that she wasn't gonna [sic] let him have 'em" (Id.); that Darla never told him that she was going to hide Daniel's tools; that Darla used a key to unlock the camper and showed him the inside of the camper in June or July 2006, and it was full of property; that Darla showed him the inside of the semi-trailer, which appeared to be full of property, but he did not get close enough to see what the property was; that he saw the keys to the four-wheeler because he rode the four-wheeler with Darla during their relationship; that the last time he was at Darla's residence was in July 2006; that Darla ended their relationship at this time due to a dispute over her sale of a house trailer to him; that Darla testified against him in

Kenton Municipal Court concerning the trailer in May 2007; that Darla lied under oath during those proceedings; and, that, in his opinion, Darla was not a truthful and honest person.

{¶17} Deputy David Doty testified that, in February 2007, he received a complaint from Daniel that someone had taken cabinets, tools, doors, and other items out of a semi-trailer at the residence; that he found evidence of forced entry into the trailer because fresh gouge marks appeared on both doors indicating that someone had taken an axe to the doors to open them; that he opened the trailer and it was mostly empty; that he and Daniel tried to locate the items Daniel explained were missing; that he knocked on the door to the residence, but Darla would not come out; that he attempted to call Darla, but she did not return his phone calls; that, through the window, he could see new, wrapped doors and windows stacked up in one of the rooms of the residence; and, that Daniel indicated those were some of the items that were missing from the semi-trailer.

{¶18} Bob Culver testified that he owned a construction company; that Darla hired him to do construction on her residence through the CHIPS low-income program run by the state; that he began the construction in October 2007 and finished in late December 2007; that part of the job was installing nine or twelve windows, which Darla apparently already had; that he and his co-contractors noticed that the house and basement were "full of stuff," including

windows and a large amount of tools; that they had to move things out into a semi-trailer in order to be able to work on the rooms; that the semi-trailer already contained many items including doors, windows, a laser level worth $1,500, and hand tools worth around $7,500 to $10,000, in his estimation; that, during the construction, many of the contractors' small items came up missing including light bulbs, magic markers, and a drill; that the first time the light bulbs came up missing, he found them on a shelf in the back room of the residence and put them back with the contractors' supplies; that the bulbs came up missing again; and, that he believed Darla was only honest "when it's convenient for her." (Id. at 113).

{¶19} Howard Bennington, Daniel's friend, testified that, during the marriage, he assisted Darla and Daniel in removing items from a barn at the residence including tools, an air compressor, a workbench, windows, and kitchen cabinets, and placed them into a semi-trailer sitting in the driveway; that, while assisting Daniel in remodeling the residence, he observed many of Daniel's tools; that, in February or March 2008, he and Daniel attempted to retrieve the property from the semi-trailer, but it was empty; and, that he has not seen any of that property in Daniel's possession since they initially moved it into the semi-trailer.

{¶20} Donald Ham, Daniel's father, testified that he often worked with Daniel around his remodeling jobs; that he was familiar with Daniel's tools; that he estimated the value of Daniel's tools to be around $25,000; that, in

approximately January 2007, he assisted Daniel in retrieving his property from the residence on two occasions; that the amount of tools Daniel retrieved from the residence after the divorce was not nearly this $25,000 amount; that he had never seen anything at Daniel's current residence that Daniel had claimed was missing; that, on their second trip to the residence, the lock had been broken off the semi-trailer; that, on this occasion, the men retrieved the camper; that the camper was locked and Daniel did not have keys, so he climbed in through the vent after they pulled it to his residence; that the interior condition of the camper was filthy; that the plumbing was torn out of the camper's kitchen, including a missing faucet; and, that everything in the camper was damaged, and Daniel could not lock it because Darla had the keys.

{¶21} Duane Ham, Daniel's brother, testified that he was familiar with Daniel's tools; that Daniel purchased "top of the line" tools (Id. at 191); that he estimated the cost of Daniel's tools to be $20,000; that Daniel currently had about 15% as many tools as he did prior to the divorce; that he went to the residence on one occasion to pick up Daniel's toolbox because Daniel was no longer allowed on the premises due to a restraining order; that he brought three men with him; that the men retrieved a large toolbox that was approximately five feet high; that the tool box was considerably lighter on this occasion than when he had helped Daniel move it on a prior occasion during the marriage; that the toolbox had

previously been nearly full, and was now practically empty; that the men also attempted to pick up Daniel's clothing, but were provided with a small bag of clothing that looked like rags; that the men were not able to retrieve any power tools, just mechanical tools; that, after Daniel retrieved the camper, he saw the inside and it was "pretty banged up" (Id. at 198); and, that some of the items were missing from the camper including the sink area.

{¶22} Daniel testified that, in November or December 2005, his brother and several friends were permitted to go to the residence to retrieve his tool boxes and his clothing; that the only clothing he received was from the "rag pile" at the residence and that he received none of his dress or work clothing; that he was never able to retrieve all of his clothing and personal effects; that he did not know what happened to the rest of his clothing; that, in December 2005, he was permitted to walk through the house with an officer to attempt to retrieve the rest of his clothing, but he could only find a few items; that, in January 2007, his attorney advised him he could go to the residence and retrieve all of the property he had been awarded; that he went to the property with Bennington and his father, Donald; that he did not contact Darla prior to going to the property; that, on this occasion, he had access to the entire house and retrieved some of his property, but was unable to retrieve everything he was awarded due to time constraints and his inability to find many items; that he was unable to move the semi-trailer because

the ground was too muddy, but he put a padlock on it because he had been awarded it and it contained his property; that, on this occasion, he also looked inside the camper and saw that it was full of his tools, but he could not pull it away because the ground was too muddy; that, in early February 2007, he made another trip to the property with his father and retrieved the camper; that, on this occasion, he unlocked the semi-trailer to see if his property was still in it, and it was; that, in mid February 2007, he went to the property with Bennington and his father and observed that the lock was broken off the semi-trailer; that he retrieved several cabinets, an empty tool box, and a drill press from the trailer; that he called Deputy Doty about the property missing from the trailer; that Darla's vehicle was in the driveway, but she would not answer the door when Deputy Doty knocked; that, immediately after the deputy left, Darla came out of the house, screamed at him, and told him he needed to call his attorney; that his attorney advised him to leave the property, so he left; that he had not returned to the property since; that, after the appeal was decided, he went to his attorney to talk about getting his property, "but [he] didn't figure anything would still be there" (Id. at 247); and, that he had not contacted Darla since the appeal was decided.

{¶23} Concerning his tools, Daniel testified that, prior to filing for divorce in October 2005, he spent approximately $32,000 to $35,000 on power and hand tools for working on engines; that his tools were insured for $28,000; that he had

spent about $15,000 on uninsured construction tools; that, at the time of the hearing, he had only been able to retrieve about 25% of the tools he had before he filed for divorce; that he valued his missing tools at around $25,000 to $28,000; and, that many of the tools he was able to retrieve from the residence were weathered, rusty, and worthless from sitting outside.

{¶24} Concerning the titles at issue, Daniel testified that he never received the titles for the camper and four-wheeler; that the titles were in Darla's name, and she had them in her possession during the divorce; that, during the marriage, the parties kept the titles in a filing cabinet in the living room at the residence; that Darla's attorney attached copies of those titles to an April 2007 pleading; and, that he took the divorce decree to the title department and attempted to transfer the titles, but they would not permit him to do so without the original titles.

{¶25} Concerning the keys at issue, Daniel testified that he never received the keys for the camper and four-wheeler, so he had been unable to use them even though he retrieved them; that, during the marriage, the parties kept the keys behind a door at the residence; and, that he got into the camper without the keys by crawling in through an exhaust panel where the refrigerator used to be and unlocking the door from the inside. Additionally, Daniel testified that, when he retrieved the camper, there were many stains on the floor, the faucet was missing,

the water heater had broken from freezing, the microwave was missing, and the refrigerator was damaged.

{¶26} In October 2008, the magistrate issued her decision recommending the trial court find Darla in contempt and finding, in part, that, regarding the titles, Darla's claim of ignorance regarding their whereabouts was untruthful, and, even if the titles were lost, only Darla had the ability to obtain duplicate titles to transfer to Daniel; and, that Darla removed the faucet and microwave from the camper during the divorce because, at the time of appraisal, the microwave and faucet were in place.

{¶27} In February 2009, the trial court adopted the magistrate's recommendations and found Darla in contempt of court for (1) failing to provide Daniel with keys for the camper, four-wheeler, GMC Sierra, and one-ton truck; (2) for failing to transfer the titles to the camper and four-wheeler to Daniel; (3) for damaging the camper by removing the faucet and microwave; and, (4) for failing to provide Daniel with numerous specified tools. Additionally, the trial court ordered Darla to provide Daniel with the keys to the camper, four-wheeler, GMC Sierra, and one-ton truck; to transfer the titles to the camper and four-wheeler to Daniel; to reimburse Daniel for replacement of the faucet and microwave removed from the camper; and, to reimburse Daniel for the value of the tools she withheld in the amount of $2,314.14. Further, the trial court ordered Daniel to return to

Darla her property that was in the camper, which he admitted to having, but declined to find him in contempt because Darla "should have removed her property from the camper upon receiving the final Decree of Divorce" (Feb. 2009 Judgment Entry, p. 4). Finally, the trial court ordered Darla to serve a ten-day jail term, with the ability to purge if she complied with its orders.

{¶28} It is from this judgment that Darla appeals, presenting the following assignment of error for our review.

**THE TRIAL COURT ERRED IN FINDING DEFENDANT-APPELLANT IN CONTEMPT OF COURT WHEN THE PLAINTIFF-APPELLEE FAILED TO ESTABLISH DEFENDANT-APPELLEE HAD VIOLATED THE COURT'S PRIOR ORDER BY CLEAR AND CONVINCING EVIDENCE.**

{¶29} In her sole assignment of error, Darla argues that the trial court erred in finding her in contempt of the court order because Daniel did not sufficiently prove that she had violated the court order. Specifically, Darla argues that Daniel went to the residence on three occasions to remove items of personal property following the divorce decree; that Daniel never announced he was coming to the residence and made no prior arrangements to retrieve his property; that Daniel was freely able to enter the home on two of those occasions and retrieve his personal property, even though he chose to leave certain items behind; that Daniel admitted she did not interfere with his ability to retrieve his personal property; that it was not her responsibility to arrange for Daniel to pick up his items or to transport the

items to him; that some of the items the trial court found she had withheld were not listed in the original joint exhibits filed with the decree of divorce and were never identified in the decree as items awarded him in the divorce; that the trial court found her to be in contempt for failing to turn over a parts washer even though it was not listed as a missing item in Daniel's motion for contempt and he offered no testimony that he had not received it; that, although the keys and titles to various vehicles were at the marital residence at one time, there had been a break-in, and she no longer had the keys or titles in her possession; that she removed the microwave and faucet from the camper during the parties' marriage; and, that Daniel admitted he had possession of items of her personal property, but the trial court refused to find him in contempt of court.

{¶30} Contempt of court is a disregard of the court's authority which "tends to bring the administration of the law into disrespect and * * * impede, embarrass or obstruct the court in the performance of its functions." *In re Green* (1961), 172 Ohio St. 269, 273 (citations omitted), overruled on other grounds by *In re Green* (1962), 369 U.S. 689. "A finding of civil contempt requires clear and convincing evidence that the alleged contemnor has failed to comply with the court's prior orders." *Moraine v. Steger Motors, Inc.* (1996), 111 Ohio App.3d 265, 268, citing *ConTex, Inc. v. Consolidated Technologies, Inc.* (1998), 40 Ohio App.3d 94. "Clear and convincing evidence has been defined as that measure or

degree of proof which is more than a mere preponderance of the evidence, but not to the extent of such certainty as is required beyond a reasonable doubt in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Ohio State Bar Assn. v. Reid* (1999), 85 Ohio St.3d 327, 331 (citations omitted).

**{¶31}** When reviewing a trial court's finding of contempt, appellate courts apply an abuse of discretion standard. *State ex rel. Ventrone v. Birkel* (1981), 65 Ohio St.2d 10, 11. An abuse of discretion implies that the trial court's attitude in reaching its decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

**{¶32}** First, Darla contends that the trial court erred in finding her in contempt of court because Daniel came to the residence on three occasions to retrieve his property following the divorce decree and was freely able to enter the premises on two of these occasions; because she did not interfere with Daniel's ability to retrieve his property on these occasions; and, because it was not her responsibility to transport his property to him. However, although testimony was heard that Daniel came to the residence on several occasions to retrieve his property and was freely able to enter the premises, testimony was also heard that many of the items Daniel was awarded in the divorce were no longer on the premises, or that he was unable to find them on the premises. Further, testimony

was heard that, after Daniel filed for divorce, several witnesses saw many of the items at the residence that Daniel was eventually awarded by the divorce decree and unable to retrieve because they were no longer at the residence.

{¶33} Additionally, Darla argues that, although the keys and titles to various vehicles were at the marital residence at one time, there had been a break-in; that she no longer had the keys or titles in her possession; and, that she removed the microwave and faucet from the camper during the parties' marriage. However, Daniel testified that Darla had the keys and the titles during the divorce, and corroborated this evidence with Frisch's testimony that Darla rode the four-wheeler and unlocked the camper after the filing date, as well as the fact that Darla's counsel made copies of the titles and attached them to a motion after he filed for divorce. It is apparent that the trial court found Daniel's testimony to be more credible than Darla's, and our review of the record demonstrates that the trial court did not abuse its discretion in making this determination, particularly given Darla's evasiveness and numerous contradictory statements. Although Darla testified that the keys and titles to the vehicles were either stolen in a break-in, taken by Daniel when he retrieved his property, or that the titles had been lost by her prior attorneys, the trial court did not abuse its discretion in finding by circumstantial evidence that Darla did have the titles and disobeyed the court's order to turn them over to Daniel. Additionally, although Darla testified that she

removed the microwave and faucet from the camper prior to Daniel filing for divorce, the magistrate found that appraisal of the camper executed during the divorce indicated that these items were present, and Darla gave two contradictory reasons for removal of the faucet. Thus, we find that the trial court did not abuse its discretion in finding Darla in contempt for (1) failing to provide Daniel with keys for the camper, four-wheeler, GMC Sierra, and one-ton truck; (2) failing to transfer the titles to the camper and four-wheeler to Daniel; (3) damaging the camper by removing the faucet and microwave; and, (4) failing to provide Daniel with numerous specified tools.

**{¶34}** Darla next argues that some of the items the trial court found she had withheld were not listed in the original joint exhibits filed with the decree of divorce and were never identified in the decree as items awarded to Daniel in the divorce. However, this Court's thorough review of the original divorce decree, including Exhibits A, B, and C attached thereto and incorporated by reference, reflects that all of the items the trial court found Darla was in contempt for withholding were awarded to Daniel. Accordingly, we do not find that the trial court abused its discretion in finding Darla in contempt for withholding these items.

**{¶35}** Next, Darla argues that the trial court erred in finding her in contempt for failing to turn over a parts washer because it was not listed as a

missing item in Daniel's motion for contempt and he offered no testimony that he had not received it. Darla is correct that this item was not listed as a missing item in Daniel's motion for contempt; however, the divorce decree awarded Daniel the contents of the parties' semi-trailer, the appraisal of the semi-trailer contents attached to the parties' divorce decree specifically listed a parts washer, and Daniel testified that he was only able to retrieve several cabinets, an empty tool box, and a drill press from the semi-trailer because the rest of the items were missing. Thus, by process of elimination, evidence existed that Daniel did not receive the parts washer. Accordingly, we do not find that the trial court abused its discretion in finding Darla in contempt for failing to turn over the parts washer.

{¶36} Finally, Darla complains that Daniel admitted he had possession of items of her personal property, but the trial court refused to find him in contempt of court. App.R. 16 requires an appellant's brief to contain a statement of the assignments of error set forth for review and an argument with respect to each assignment of error. Where arguments have not been adequately set forth for review, an appellate court is not required to address them. App.R. 16(A)(7); App.R. 12(A)(2). Accordingly, as Darla did not set forth this argument in an assignment of error in her appellate brief, we need not address it.

{**¶37**} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**