[Cite as *In re Guardianship of Elliot*, 2010-Ohio-5405.]

## IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PUTNAM COUNTY

IN THE MATTER OF
THE GUARDIANSHIP OF:

    KATLYN NICHOLE ELLIOTT,

CASE NO. 12-10-02

[DAVID R. SCHUERMAN -

    APPELLANT].

**O P I N I O N**

**Appeal from Putnam County Common Pleas Court
Probate Division
Trial Court No. 20002014**

**Judgment Reversed and Cause Remanded**

**Date of Decision: November 8, 2010**

APPEARANCES:

    *Todd C. Schroder* **for Appellant**

    *Gregory Hermiller* **for Appellee**

Case No. 12-10-02

**PRESTON, J.**

{¶1} Appellant, David Schuerman (hereinafter "David"), appeals the judgment of the Putnam County Court of Common Pleas, Probate Division, granting a modification of David's visitation with Katlyn Nichole Elliott (hereinafter "Katlyn") and denying David's motion to be appointed co-guardian and primary residential custodian of Katlyn. For the reasons that follow, we reverse.

{¶2} David and Appellee, Amy Hipsher (fna Schuerman) (hereinafter "Amy"), were married on October 5, 1997. In 2000, the couple became aware that a family acquaintance, Elissa Elliott (hereinafter "Elissa"), was pregnant, but did not want to raise the child. David and Amy agreed to raise the child as their own. In August of 2000, Elissa gave birth to Katlyn. Both Amy and David were present during her birth. David was listed as Katlyn's father on the birth certificate despite having full knowledge that he was not, nor could he be, Katlyn's biological father as he and Elissa never had a sexual relationship.

{¶3} Immediately thereafter, Amy filed a guardianship action to be appointed Katlyn's guardian. The parties chose not to list David on the guardianship application because he had pled guilty to a charge of attempted corruption of a minor one year earlier.[1] On October 18, 2000, the court appointed

---

[1]This charge was based on a consensual sexual act between David and fifteen-year-old girl in September of 1997 prior to David marrying Amy. It is undisputed by the parties that Amy was fully aware of the surrounding facts and circumstances of the incident at the time it occurred.

Amy as Katlyn's guardian. David and Amy raised Katlyn as their own daughter. Katlyn had no relationship with Elissa and her biological father is believed to be dead due to a drug overdose.

{¶4} In August of 2002, Elissa and David executed an acknowledgement of paternity at the Paulding County Health Department pursuant to R.C. 3111.23.[2] (Nov. 6, 2009, Hrg. at 33). David's acknowledgment of paternity was subsequently entered in the birth registry. (David's Ex. 9).

{¶5} Several years later, David and Amy began to experience difficulties in their marriage. On November 13, 2006, their marriage was dissolved. On December 8, 2006, David filed a motion with the Putnam County Juvenile Court requesting visitation rights with Katlyn. (Doc. No. 17). On January 16, 2007, the court granted David's motion for visitation rights finding that it was in Katlyn's best interest. (Doc. No. 20). The court named Amy as Katlyn's residential parent and granted David visitation with Katlyn on every other weekend and selected holidays pursuant to Local Rule 28. (*Id.*). David was also ordered to be responsible for one-half of Katlyn's school related expenses and one-half of her uninsured medical expenses. (*Id.*).

---

[2] R.C. 3111.23 states in part that the "natural mother" and "the man acknowledging he is the natural father" may file an acknowledgment of paternity "acknowledging that the child is the child of the man who signed the acknowledgment."

**{¶6}** On March 22, 2007, Amy filed a complaint for child support in the Van Wert County Juvenile Court. (David's Ex. 9). In her complaint for child support, Amy alleged that David was Katlyn's legal father pursuant to R.C. 3111.25 because he signed an acknowledgement of paternity. (*Id.*). Amy also attached evidence documenting the acknowledgement to the complaint filed with the Office of Child Support. David agreed that it was in Katlyn's best interest to pay child support. The court then issued an order that David pay child support to Amy. Since that time, David has complied with the court's order, remaining current on his support obligation.

**{¶7}** In March of 2009, David moved to Portage, Michigan where he lives with his new wife and three step-sons. Katlyn resides with Amy and her new husband in Lima, Ohio. David continued to diligently exercise his visitation with Katlyn despite the three-hour car ride between his and Amy's residences. On September 29, 2009, Amy filed a motion for modification of visitation with the Putnam County Probate Court requesting that David's visitation with Katlyn be reduced to two round-trip visits per year in accordance with Local Rule 28, Option 2. (Doc. No. 25). Amy alleged that modifying David's visitation would be in Katlyn's best interest because David now resided over 180 miles from Amy's home. (*Id.*). On October 2, 2009, David responded by filing a motion with the court requesting to be appointed co-guardian and to be named as Katlyn's primary residential custodian. (Doc. No. 28).

{¶8} The court conducted an evidentiary hearing on October 22, 2009, where it heard testimony from Amy and Katlyn. David was also present at the hearing, but did not testify. During the hearing, Katlyn was asked to tell the court with whom she preferred to live. (Oct. 22, 2009 Hrg. at 31). At first, Katlyn was reluctant to answer the question, revealing that Amy had told her that she would no longer be able to see Amy if she expressed her opinion on the matter. (*Id*.). However, Katlyn eventually stated that she wanted to live with David. *(Id.)*

{¶9} The next day, on October 23, 2009, David filed an Emergency Motion stating that shortly after the evidentiary hearing, Amy left Katlyn with Elissa—Katlyn's biological mother and a person who Katlyn barely knows—apparently intending to permanently leave Katlyn with Elissa. (Doc. No. 36). David's Emergency Motion requested the court to require Elissa to immediately return Katlyn to Amy. (*Id*.). The same day, the court granted David's Emergency Motion ordering that Katlyn be returned to Amy's physical custody subject to David's visitation rights until further ordered. (Doc. No. 37). The court then appointed a guardian ad litem on Katlyn's behalf to investigate and prepare a report for the court. (Doc. No. 42).

{¶10} On November 6, 2006, a second evidentiary hearing was held. This time Katlyn expressed that she did not want to be the one to decide whether she lived with Amy or David. (Nov. 6, 2009 Hrg. at 107-108). David and his new wife also provided testimony at the hearing. Although the primary inquiry

focused on which living situation would be in Katlyn's best interest, the parties also disputed the legal effect of David's acknowledgement of paternity and whether David could be appointed co-guardian of Katlyn because he was not a resident of Ohio. After the conclusion of the evidentiary hearings, the court ordered the parties to submit their final written arguments by December 5, 2009.

{¶11} On December 14, 2009, Katlyn's guardian ad litem filed his report with the court. (Doc. No. 51). After conducting multiple interviews with the parties and Katlyn, visiting the homes of both Amy and David, and observing Katlyn in each environment, the guardian ad litem concluded that it would be in Katlyn's best interest for David to be named Katlyn's residential custodian. (*Id.*).

{¶12} On February 9, 2010, the court issued its decision. The court expressed its concern with Amy's actions during the proceedings when she left Katlyn with Elissa after Katlyn expressed her preference to live with David during the October 22, 2009 hearing. (Doc. No. 54). The court characterized Amy's behavior as "vengeful, spiteful, and inexcusable." (*Id*. at 5). In its decision, the court also touched upon several salient facts elicited from Amy's testimony where it was revealed that since Amy had been Katlyn's residential custodian, Katlyn was chronically absent from school resulting in a troublesome amount of missed days. The court noted that Katlyn suffered from significant problems with her teeth as a result of Amy neglecting to take Katlyn to routine dental exams. The

court was also concerned about Katlyn's relationship with Amy's husband, noting that the guardian ad litem reported that the relationship was strained.

{¶13} The court expressed concern with David's previous conviction of attempted corruption of a minor. However, the court was encouraged by the fact that David was now in a stable marriage, gainfully employed and maintained "a healthy lifestyle." (*Id*. at 5). Moreover, the court noted that David's actions were focused on his family and that the guardian ad litem acknowledged that Katlyn was a different person, in a positive manner, when she was in David's household. After making these findings, the court concluded that "it would be in [Katlyn's] best interest to be in the custody of [David] *if it were permissible*." (*Id.* at 6) (Emphasis Added).

{¶14} Despite finding that it was in Katlyn's best interest to reside with David, the court concluded that under the current statutory law it was without the authority to appoint David as co-guardian because he is not a resident of Ohio. Furthermore, the court determined that it would not recognize David as Katlyn's legal father because he had signed the affidavit of paternity knowing that he was not her biological father. Based on this reasoning, the court concluded that it had no choice but to grant Amy's motion to modify David's visitation with Katlyn. However, the court ordered David to be given visitation with Katlyn pursuant to Local Rule 28, Option 1, which provided David with more visitation time than

requested by Amy by allowing David to have three annual round-trip visits in even years and four in odd years.

{¶15} On March 12, 2010, David filed his notice of appeal. (Doc. No. 60). David now appeals raising two assignments of error for our review.

**ASSIGNMENT OF ERROR NO. I**

**THE PROBATE COURT MADE AN ERROR OF LAW AND/OR ABUSED ITS DISCRETION WHEN OVERRULING APPELLANT'S MOTION TO BE APPOINTED AS CO-GUARDIAN AFTER FINDING IT WAS IN THE CHILD'S BEST INTEREST TO RESIDE WITH HIM BUT NOT FINDING THAT HE WAS THE CHILD'S LEGAL FATHER WHICH WOULD HAVE PERMITTED HIM TO BE AN OUT-OF-STATE GUARDIAN.**

{¶16} In his first assignment of error, David argues that the trial court erred in determining that it could not appoint David as Katlyn's guardian because he is not a resident of Ohio. David maintains that the trial court's decision was contrary to the current statutory law because the residency requirements for guardians permit a parent who resides out-of-state to be a guardian of their child. Accordingly, David's primary contention under this assignment of error is that the trial court erred when it refused to recognize David as Katlyn's legal father.

{¶17} Generally, a determination regarding a guardianship is within the sound discretion of the trial court subject to reversal only for an abuse of discretion. *In the Matter of the Guardianship of Grant*, 3rd Dist. No. 1-02-99, 2003-Ohio-4234, ¶ 6; *In re Termination of Guardianship of Hendrickson*, 152

Ohio App.3d 116, 786 N.E.2d 937, 2003-Ohio-1220, ¶ 11. However, the primary question in this assignment of error concerns a question of law. Specifically, whether the trial court erred in its determination that the legal effect of David's acknowledgement of paternity was negated by David signing an affidavit that he knew to be false. Questions of law are reviewed de novo, an independent review, without deference to the lower court's decision. *Ohio Bell Tel. Co. v. Pub. Util. Comm. of Ohio* (1992), 64 Ohio St.3d 145, 147, 593 N.E.2d 286.

{¶18} In August of 2002, Katlyn's biological mother and David executed an acknowledgement of paternity pursuant to R.C. 3111.23. The information of the acknowledgment was subsequently entered into the birth registry. As discussed above, in March of 2007, after Amy and David divorced, Amy filed a complaint for child support with Van Wert County Office of Child Support alleging that David was Katlyn's father. Amy attached the acknowledgment of paternity executed by David to her complaint for child support. Section 3111.25 of the Revised Code states:

> **An acknowledgment of paternity is final and enforceable without ratification by a court when the acknowledgment has been filed with the office of child support, the information on the acknowledgment has been entered in the birth registry, and the acknowledgment has not been rescinded and is not subject to possible recission [sic] pursuant to section 3111.27 of the Revised Code.**

{¶19} Once the acknowledgement of paternity has been filed with the child support office, R.C. 3111.27 permits the person who signed the acknowledgement

of paternity to rescind the acknowledgment. In addition, the statute expressly requires that in order for the rescission to take effect certain requirements must be fulfilled "[n]ot later than sixty days after the date of the latest signature on the acknowledgment." See R.C. 3111.27. At the time of the hearings, neither David nor Katlyn's birth mother had sought to rescind David's acknowledgment of paternity.

{¶20} Section R.C. 3111.26 of the revised code provides that "[a]fter an acknowledgment of paternity becomes final and enforceable, *the child is the child of the man who signed the acknowledgment of paternity, as though born to him in lawful wedlock*." (Emphasis Added). Consequently, courts have held that a formal acknowledgement of paternity, once final and enforceable, cannot be rebutted—even by the results of genetic testing—unless rescinded pursuant to R.C. 3111.28. See *Galan v. Holbert*, Greene App. No. 2007-CA-75, 2008-Ohio-1586¶ 17; see also *Thomas v. Cruz*, Lorain App. No. 03CA0008247, 2003-Ohio-6011¶ 14.

{¶21} We are mindful that the trial court's decision in this matter was based upon its belief that David should not be permitted "to use his own wrongdoing to his advantage"—namely signing an affidavit that he knew to be false. (Doc No. 54 at 4). However, the legislature has accounted for a scenario such as this one by drafting R.C. 3111.28 which permits either the person who signed the acknowledgment, *or a guardian or legal custodian of the child* to bring

an action to rescind on the basis of fraud. See R.C. 3111.28. The action to rescind must be brought "no later than one year after the acknowledgement becomes final." We believe that this one-year timeframe for bringing a rescission action based on fraud implicitly addresses two competing, yet equally critical interests. The first is to prevent a person from filing a false affidavit of paternity, and the second is to give the child at the center of the matter a sense of stability and finality with regard to the identity of his or her father. Consequently, once the timeframe for filing a rescission action has lapsed, the man who signed the affidavit of paternity is deemed to be the child's father.

{¶22} While we recognize the unique circumstances of this case placed the trial court in a somewhat difficult position, we believe that the statutory law is clear regarding the legal effect of David's acknowledgment of paternity. Based on the facts of this case, David's acknowledgement of paternity became final when Amy filed for child support in March of 2007. Furthermore, no action was brought by either party or Katlyn's biological mother to rescind David's acknowledgment within the relative timeframes. Therefore, we find the statutory authority cited above mandates a finding that David is Katlyn's legal father.

{¶23} Having determined that David is Katlyn's legal father, we must next examine whether the trial court had the authority to appoint David as Katlyn's guardian even though he is an out of state resident.

{¶24} The trial court relied on R.C. 2109.21(C) in reaching its conclusion that it was without the authority to appoint David as Katlyn's guardian because he is not a resident of Ohio. Section 2109.21(C) governs the residency requirements for fiduciaries and provides, in relevant part:

> **(C)(1) A guardian shall be a resident of this state, except that the court may appoint a nonresident of this state as a guardian if any of the following applies:**
>
> **(a) The nonresident is named in a will by a parent of a minor.**
>
> **(b) The nonresident is selected by a minor over the age of fourteen years as provided by section 2111.12 of the Revised Code.**
>
> **(c) The nonresident is nominated in or pursuant to a durable power of attorney as described in division (D) of section 1337.09 of the Revised Code or a writing as described in division (A) of section 2111.121 of the Revised Code.**

The trial court correctly noted that none of these exceptions to the residency requirement applied to David. However, as this Court has previously held when the person seeking appointment as a guardian is the parent of the ward, R.C. 2111.08 controls over the residency restrictions listed in R.C. 2109.21(C). See *In the matter of the Guardianship of Grant*, 3rd Dist. No. 1-02-99, 2003-Ohio-4234, ¶ 10. Section 2111.08 of the revised code provides for the natural guardianship rights and obligations of parent and states, in part:

> **The wife and husband[3] are the joint natural guardians of their minor children and are equally charged with their care, nurture, welfare, and education and the care and management of their estates. * * ***
>
> **If the wife and husband live apart, the court may award the guardianship of a minor to either parent, and the state in which the parent who is the residential parent and legal custodian or who otherwise has the lawful custody of the minor resides has jurisdiction to determine questions concerning the minor's guardianship.**

{¶25} Based on the language contained in R.C. 2111.08, we held that a probate court was not limited by the residency restrictions stated in R.C. 2109.21(C) and was in fact authorized to award a nonresident father guardianship of his child if it found the facts warranted the appointment of the guardian. *In the matter of the Guardianship of Grant*, 3rd Dist. No. 1-02-99, 2003-Ohio-4234, ¶ 13.

{¶26} In the instant case, the trial court found that it would be in Katlyn's best interest to award co-guardianship to David and name him as her primary residential custodian. The only impediment to the trial court's appointment of David as co-guardian was its finding that David was not Katlyn's legal father. However, as previously discussed, we find that David is Katlyn's legal father under the current statutory law and R.C. 2111.08 expressly permits the court to

---

[3] Keeping in line with other courts, this Court in Grant construed the term 'husband and wife,' in the context of R.C. 2111.08 to mean 'parents,'—i.e. mother and father. See also, *In re Guardianship of Moyer* (1941), 68 Ohio App. 319, 40 N.E.2d 695; *In the matter of Guardianship of Warner*, (September 2, 1987), Medina App. No. 1600.

appoint a non-resident parent as their child's guardian. Therefore, we conclude that the trial court erred when it found that it had no authority to appoint David as Katlyn's guardian.

**{¶27}** David's first assignment of error is, therefore, sustained.

### ASSIGNMENT OF ERROR NO. II

**THE PROBATE COURT'S CONCLUSION THAT APPELLANT COULD NOT BE APPOINTED AS GUARDIAN WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AFTER FINDING IT WAS IN THE CHILD'S BEST INTEREST TO RESIDE WITH HIM BUT NOT FINDING THAT HE WAS THE CHILD'S LEGAL FATHER WHICH WOULD HAVE PERMITTED THE APPOINTMENT OF AN OUT-OF-STATE GUARDIAN.**

**{¶28}** In his second assignment of error, David argues that the trial court's decision was against the manifest weight of the evidence. As the basis for this contention, David argues that despite its finding that was in Katlyn's best interest to appoint David as her residential custodian, the trial court erroneously concluded it could not appoint David as guardian because it refused to recognize him as Katlyn's legal father. However, as we found in the first assignment of error, David is Katlyn's legal father under the current law. Therefore, we find David's second assignment of error is rendered moot.

**{¶29}** Accordingly, David's second assignment of error is overruled.

**{¶30}** Having found error prejudicial to the appellant herein in the particulars assigned and argued, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**WILLAMOWSKI, P.J., and ROGERS, J., concur.**

**/jlr**