[Cite as *Walker v. Walker*, 2013-Ohio-1496.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
MARION COUNTY

TIMOTHY E. WALKER,

    PLAINTIFF-APPELLANT,          CASE NO.  9-12-15

    v.

CARMEN L. WALKER,             O P I N I O N

    DEFENDANT-APPELLEE.

Appeal from Marion County Common Pleas Court
Family Division
Trial Court No. 11 DR 0030

Judgment Affirmed in Part, Reversed in Part and Cause Remanded

Date of Decision:   April 15, 2013

APPEARANCES:

    *Kevin P. Collins*  for Appellant

    *J.C. Ratliff, Jon L. Jensen and Jeff Ratliff*  for Appellee

**ROGERS, J.**

{¶1} Plaintiff-Appellant, Timothy Walker, appeals the judgment of the Court of Common Pleas of Marion County, Family Division, granting his complaint for divorce against Defendant-Appellee, Carmen Walker. On appeal, Timothy contends that the trial court committed the following three errors: (1) finding that he engaged in financial misconduct and ordering him to pay Carmen $7,500.00 as a result of his financial misconduct; (2) ordering him to pay $2,058.00 to Carmen for failure to comply with trial court's order to make payments on the parties' second mortgage; and (3) designating Carmen as Noah's residential parent for purposes of school placement. Based on the following, we affirm in part and reverse in part the trial court's judgment.

{¶2} Timothy and Carmen were married on September 15, 1990, and have three children born as issue of the marriage, to wit: Samantha, born in 1991; Allison, born in 1995; and, Noah, born in 2000.

{¶3} On January 27, 2011, Timothy filed a complaint for divorce, requesting, in relevant part, permanent custody of Noah. In addition, Timothy filed an Affidavit of Property, which listed the following property as martial property: the marital residence, located at 1506 Hardin-Marion Rd., Larue, Ohio;

six vehicles; two bank accounts; two retirement accounts; a life insurance policy; and furniture.

{¶4} On March 1, 2011, Carmen filed her answer, requesting, in relevant part, that she be designated as Allison and Noah's residential parent. In addition, Carmen filed an Affidavit of Property, which listed, among other things, numerous firearms and a gun safe as marital property. Carmen also filed a motion requesting the trial court to order Timothy to file a corrected and complete Affidavit of Property.

{¶5} On March 9, 2011, the trial court granted Carmen's motion and ordered Timothy to file an amended Affidavit of Property. On March 15, 2011, Timothy filed his amended Affidavit of Property, which, for the first time, included a gun safe, valued at $500.00, as martial property. The amended Affidavit of Property did not list any firearms.

{¶6} On April 5, 2011, the trial court issued orders pendente lite, which, in relevant part, ordered Timothy to make payments on the parties' second mortgage (the "mortgage").

{¶7} On May 27, 2011, Carmen filed a motion for contempt, requesting the trial court to find Timothy in contempt for failure to make monthly payments on the mortgage.

{¶8} On September 12, 2011, Timothy filed a pretrial statement. Along with his pretrial statement, Timothy included an affidavit which listed, in relevant part, "[f]irearms and safe," which he valued at $1,500.00. (Docket No. 68, p. 5).

{¶9} On October 6, 2011, the parties filed a document with the trial court entitled "Agreement & Stipulations of the Parties." (Docket No. 75). In it, the parties stipulated, in relevant part, that Timothy failed to make payments on the mortgage in contravention of the orders pendente lite.

{¶10} On January 18, 2012, the matter proceeded to the final hearing.

{¶11} On February 15, 2012, the trial court filed its judgment entry. At the final hearing, Carmen alleged that Timothy committed financial misconduct when he disposed of the parties' firearms prior to filing the complaint for divorce, and the trial court found as follows:

> Both parties testified that there are thirty to thirty-one guns and a gun safe among the assets of the marriage. There was no dispute that all of the guns, save one, are martial property. * * * The Court finds [Timothy] removed the guns from the marital home on January 24, 2011, three days prior to the filing of his Complaint for Divorce. [Timothy] testified that he sold six or eight of the guns in order to purchase a used bedroom set for his residence. The remainder he claims to have sold to his brother for $2,000.00. [Timothy's] March 15, 2011, Property Affidavit lists the gun safe at a value of $500.00. The Court finds that his testimony indicating that several of the guns are valued at $700.00 to $1,800.00 a piece causes the Court to question the credibility of his testimony that he sold them for $2,000.00. The Court finds that [Timothy's] trading of guns for used furniture and $2,000.00 grossly undervalues the asset. The guns were not appraised due to them being made unavailable to

> [Carmen] for appraisal. The Court finds that [Timothy] committed financial misconduct when he disposed of the guns in anticipation of filing for divorce. Consequently[,] a value of the guns is not possible. The Court finds however that [Timothy] shall pay, pursuant to Ohio Revised Code §3109.05.171(E),[1] three times the value of what he testified he sold the guns for and the affidavit of property value of the gun safe for a total of $7,500.00 to [Carmen] as her share of the property division with respect to the guns. Judgment Entry, p. 7.

With respect to Timothy's failure to make payments on the mortgage, the trial court found as follows:

> [Timothy] was ordered to pay the second mortgage pursuant to temporary orders filed April 5, 2011. The evidence shows that [Timothy] did not pay the months of April, May, June and July. He did pay $50.00 towards the mortgage during the months of May, June and July. The Court finds that he was responsible for the second mortgage payment of $552.00 from the date of the temporary orders, April 5, 2011 in lieu of child support. No evidence was provided regarding the payments for the months of August forward. The Court finds that [Timothy] did not comply with the temporary orders for the months of April, May, June and July. [Timothy] testified that the second mortgage payment is $552.00 per month. He therefore should have paid $2,208.00 towards those four months. The evidence shows he paid $150.00. The Court finds [Carmen's] Motion for Contempt regarding the payment of the second mortgage to be well taken. [Timothy] shall pay [Carmen] in the amount of $2,058.00. *Id.* at p. 7-8.

Finally, the trial court designated Timothy as Noah's residential parent, and designated Carmen as Noah's residential parent for the purpose of school placement.

---

[1] We assume the trial court intended to cite to R.C. 3105.171(E), as the Revised Code does not contain a statute numbered 3109.05.171(E).

{¶12} Timothy timely appeals the trial court's judgment, presenting the following assignments of error for our review.

*Assignment of Error No. I*

**THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY FINDING HE ENGAGED IN FINANCIAL MISCONDUCT AND MAKING A DISTRIBUTIVE AWARD TO APPELLEE.**

*Assignment of Error No. II*

**THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY ORDERING HIM TO PAY $2,208.00 FOR THE MORTGAGE.**

*Assignment of Error No. III*

**THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN DESIGNATING APPELLEE AS THE RESIDENTIAL PARENT FOR SCHOOL PURPOSES FOR NOAH.**

*Assignment of Error No. I*

{¶13} In his first assignment of error, Timothy contends that the trial court erred when it found that he committed financial misconduct, and when it ordered him to pay Carmen $7,500.00 as a result of his financial misconduct. In particular, Timothy argues that the evidence does not support the trial court's finding of financial misconduct, and that the trial court's award of $7,500.00 is contrary to law. We disagree with Timothy's contention concerning the trial court's finding

of financial misconduct, but agree that the trial court's award of $7,500.00 is contrary to law.

*Financial Misconduct*

{¶14} The trial court has discretion in determining whether a spouse committed financial misconduct, and an appellate court will only reverse that determination if it is against the manifest weight of the evidence. *E.g.*, *Eggeman v. Eggeman*, 3d Dist. No. 2-04-06, 2004-Ohio-6050, ¶ 19. Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *C. E. Morris Co. v. Foley Const. Co.*, 54 Ohio St.2d 279, 280 (1978). "[W]hen reviewing a judgment under a manifest-weight-of-the-evidence standard, a court has an obligation to presume that the findings of the trier of fact are correct." *State v. Wilson*, 113 Ohio St.3d 382, 387, 2007-Ohio-2202, ¶ 24, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80-81 (1984). This presumption arises because the trial court is in the best position "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal* at 80. Accordingly, "[a] reviewing court should not reverse a

decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court." *Id*. at 81.

{¶15} In divorce proceedings, a trial court must classify property as marital or separate property. R.C. 3105.171(B). Then, the trial court must divide the marital property equally or, if an equal division is inequitable, the court must divide the marital property equitably. R.C. 3105.171(C)(1).

{¶16} A trial court, however, may find an equal division of marital property inequitable if one spouse demonstrates that the other has committed financial misconduct.

> If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property. R.C. 3105.171(E)(4).

"Financial misconduct requires more than just dishonest behavior, it requires a wrongdoing that interferes with a spouse's property rights and results in profit to the wrongdoer from the alleged misconduct or stems from an intentional act meant to defeat the other spouse's distribution of assets." *Thomas v. Thomas*, 5th Dist. No. 11CAF090079, 2012-Ohio-2893, ¶ 63, citing *Eggeman*, 2004-Ohio-6050 at ¶ 24; *Jacobs v. Jacobs*, 4th Dist. No. 02CA2846, 2003-Ohio-3466. "To find financial misconduct, a court must look to the reasons behind the questioned activity or the results of the activity and determine whether the wrongdoer profited

from the activity or intentionally dissipated, destroyed, concealed, or fraudulently disposed of the other spouse's assets." *Id.* For example, courts have affirmed findings of financial misconduct where a spouse diminishes marital assets without the knowledge or permission of the other spouse, *e.g.*, *Hoffman v. Hoffman*, 10th Dist. No. 94APF01-48 (Aug. 11, 1994), or diminishes martial assets during the parties' permanent separation, *e.g.*, *Babka v. Babka*, 83 Ohio App.3d 428, 436 (9th Dist. 1992) (upheld finding of financial misconduct where offending spouse liquidated joint bank account just before the parties' divorce); *see also Rinehart v. Rinehart*, 4th Dist. No. 96 CA 10 (May 18, 1998) (finding the time frame in which the alleged financial misconduct occurs may often demonstrate wrongful scienter). Bearing this authority in mind, we turn our attention to the record before us.

{¶17} During the final hearing, Carmen introduced a document containing a handwritten list of Timothy's firearms (the "list"), which was later admitted into evidence. The list identified a total of 30 firearms by their make, model, and serial number. Timothy testified that the list was created approximately four or five years prior to the final hearing. He explained that he directed his daughter, Allison, to create the list after the martial residence had been burglarized.

{¶18} Timothy vacated the marital residence on or about January 7, 2011, and moved to his father's residence, located at 342 E. Farming St., Marion, Ohio. Timothy testified that upon vacating the marital residence he removed, among

other things, a gun safe and all of the firearms. Timothy conceded that all the firearms he took from the marital residence were acquired during the marriage. Though the list identified 30 firearms, Timothy testified that he owned fewer than 30 firearms at the time he vacated the marital residence. Timothy, however, did not specify the exact number of firearms he owned at the time he vacated the marital residence.

{¶19} Prior to filing his complaint for divorce, Timothy traded approximately six or eight of the firearms to Kimberly Hall and her husband (collectively "the Halls"). Timothy explained that he traded the firearms for a bedroom suite for his eldest daughter, Samantha, who resided with him. Timothy indicated that he and the Halls did not assign a value to the firearms, nor did he have any intention of trading the bedroom suite back to the Halls in exchange for the firearms.

{¶20} Like Timothy, Kimberly testified that she and her husband traded a bedroom suite, which consisted of a dresser and a queen-size bed, to Timothy in exchange for approximately six firearms. Kimberly explained that she could not recall the exact date the transfer occurred, but testified that it occurred shortly after Timothy had moved out of the marital residence because he was concerned about obtaining some bedroom furniture for his daughter, Samantha. During redirect, the following relevant exchange occurred:

Q: When Tim[othy] appears on your premises and you felt that he was at least out of his house, which did he appear to have more of an interest in, the guns and their value or getting some furniture for his daughter to sleep on?

A: Getting furniture.

Q: How do you know that?

A: Because he was - - he sat at my kitchen table and cried. Hearing Tr., p. 169-70.

Kimberly indicated that she did not know the value of the bedroom suite, and that she and her husband have no intention of getting the bedroom suite back or returning the firearms to Timothy.

{¶21} As for the remainder of the firearms, Timothy testified that he sold them to his brother. Timothy recalled selling the firearms on or about January 10, 2011. Despite his uncertainty concerning the date of sale, Timothy, when asked whether he sold the firearms before or after he filed his complaint for divorce, testified that he sold them "way before." Hearing Tr., p. 222. Timothy testified that he received approximately $2,000.00 in exchange for the firearms.

{¶22} On cross-examination, Timothy was questioned about the values of the firearms on the list. Timothy testified that the most valuable firearm on the list was worth $700.00. As for the values of the remaining firearms, the following relevant exchange occurred:

> Q: * * * But values of guns, I mean, some of these guns were over thousand dollar shotguns, aren't they?
>
> A: Like - -
>
> Q: You've got the Brownings, you've got the Charles Daly?
>
> * * *
>
> A: Charles Daly, [$]450[.00].
>
> Q: How much is the Encore?
>
> A: The Encore I think we paid $600.00 for.
>
> Q: The Winchester Super X Model 1?
>
> A: I think that was $300.00. Hearing Tr., p. 260-1.

After this exchange, defense counsel continued to question Timothy about the value of particular firearms on the list, but Timothy testified that he was unsure of their value.

{¶23} Finally, Timothy testified that he sold the gun safe for $100.00 in January 2011. When asked why the gun safe appeared on his amended Affidavit of Property, Timothy asserted that his then-attorney made a mistake.

{¶24} Carmen testified that Timothy removed the firearms from the marital residence on January 24, 2011. Though Carmen conceded that she was not aware of the "specific value" of the firearms, she testified that she researched the subject.

Based on her research, Carmen indicated that $11,000.00 was a conservative value of the firearms.

{¶25} Upon review, we find that the record contained some competent, credible evidence upon which the trial court could conclude that Timothy committed financial misconduct when he sold and traded the parties' firearms and gun safe. In particular, the timing and secretive nature of the transactions demonstrate the wrongful intent necessary for a finding of financial misconduct. Timothy maintains that he exchanged the firearms and gun safe to support himself and his children, thus suggesting that the timing of the transactions is not indicative of any wrongful intent. Timothy's argument, however, omits a crucial fact, Carmen's lack of knowledge concerning the transactions. There is no evidence that Timothy, who was clearly aware that the firearms and gun safe were marital assets, secured Carmen's permission to sell the firearms and gun safe or otherwise informed Carmen of their sale. In fact, the record reveals that Carmen did not become aware of the transactions until sometime after the complaint for divorce was filed. Aside from avoiding Carmen's objection to the sale of the firearms and gun safe, we cannot imagine, nor has Timothy provided, any reasonable explanation for the secretive transactions. As such, we find that the timing and secretive nature of the transactions sufficiently demonstrate the wrongful intent necessary for a finding of financial misconduct.

**{¶26}** Furthermore, the record reveals that the value of the firearms far exceeded the value Timothy received in exchange for the same. According to Timothy, four of the firearms on the list had a total value of $2,050.00. Though four of the 30 firearms on the list had a total value of $2,050.00, Timothy only received a used bedroom suite and $2,000.00 in exchange for all 30 guns. Also, Timothy only received $100.00 for the gun safe, which he later valued at $500.00. Clearly, Timothy grossly undervalued the firearms and gun safe, and consequently dissipated a significant portion of Carmen's property interest in the same.

**{¶27}** Given the foregoing, we find that the trial court's determination that Timothy committed financial misconduct was not against the manifest weight of the evidence.

*$7,500.00 Award*

**{¶28}** Timothy contends that the trial court's award is contrary to law. Specifically, Timothy argues that the trial court erroneously applied R.C. 3109.171(E)(5) in determining the award. We agree.

**{¶29}** Generally, a trial court's decision to compensate a spouse for the other spouse's financial misconduct is reviewed for an abuse of discretion. *Eggeman*, 2004-Ohio-6050, ¶ 23, citing *Thill v. Thill*, 2d Dist. No. 2001-CA-23 (Aug. 17, 2001). However, in this matter, the error raised by Timothy presents an issue of law. Questions of law are reviewed de novo. *In re Guardianship of*

-14-

*Elliott*, 3d Dist. No. 12-10-02, 2010-Ohio-5405, ¶ 17, citing *Ohio Bell Tel. Co. v. Pub. Util. Comm. of Ohio*, 64 Ohio St.3d 145, 147 (1992); *Castlebrook, Ltd. v. Dayton Properties Ltd. Partnership*, 78 Ohio App.3d 340, 346 (2d Dist. 1992) ("where a trial court's order is based on an erroneous standard or a misconstruction of the law, * * * an appellate court may properly substitute its judgment for that of the trial court").

**{¶30}** Having properly found that Timothy committed financial misconduct, the trial court could have compensated Carmen "with a distributive award or with a greater award of marital property." R.C. 3105.171(E)(4). Review of the judgment entry, however, reveals that the trial court neither compensated Carmen with a distributive award nor a greater award of marital property. Instead, the trial court multiplied $2,500.00 three times to arrive at $7,500.00.[2] Given the trial court's explanation of its award, we find that it applied R.C. 3105.171(E)(5) in determining the award, and that doing so was contrary to law.

**{¶31}** R.C. 3105.171(E)(5) provides:

> If a spouse has substantially and willfully failed to disclose marital property, separate property, or other assets, debts, income, or expenses as required under division (E)(3) of this section, the court may compensate the offended spouse with a distributive award or with a greater award of marital property not to exceed three times the value of the marital property, separate property, or other assets,

---

[2] According to the trial court's judgment entry, the $2,500.00 figure represents the value of the gun safe ($500.00) and the proceeds Timothy received from selling the firearms to his brother ($2,000.00).

debts, income, or expenses that are not disclosed by the other spouse.

Given the plain language of division (E)(5), the trial court may only impose the penalty provided therein if the offending spouse violates division (E)(3), which provides: "The court shall require each spouse to disclose in a full and complete manner all marital property, separate property, and other assets, debts, income, and expenses of the spouse." R.C. 3105.171(E)(3).

{¶32} Contrary to Appellee's assertions, Timothy did not violate division (E)(3). It is undisputed, and the trial court found, that Timothy sold and traded all of the parties' firearms prior to filing the complaint for divorce.[3] Accordingly, Timothy was not required to disclose the firearms, as they were no longer an asset of either party.[4] Since Timothy was not required to disclose the firearms, he did not violate division (E)(3). As such, the trial court erred as a matter of law when it applied division (E)(5) to award Carmen $7,500.00.

{¶33} Carmen maintains that any error in how the trial court arrived at the $7,500.00 award is harmless. In particular, Carmen argues that $7,500.00 represents roughly half of the total value of the firearms on the list. In reaching this conclusion, Carmen relies on what she asserts is a fair average value for each

---

[3] Specifically, the trial court found "that [Timothy] committed financial misconduct when he disposed of the guns *in anticipation of filing for divorce*." (Emphasis added.) Judgment Entry, p. 7.

[4] Timothy was, however, required to disclose the assets he received in exchange for the firearms, since those assets would be classified as marital property. While there is no finding as to whether Timothy made this disclosure, it appears, based on our independent review of the record, that Timothy did disclose the assets he received in exchange for the firearms.

of the firearms on the list, i.e., $512.50. This value is derived from dividing the total value of the firearms Timothy valued during the hearing ($2,050.00) by the number of firearms Timothy valued (4). When Carmen's average value of $512.50 is multiplied by 30 firearms we reach a total value of $15,375.00 for all the firearms on the list.

{¶34} While Carmen's arithmetic is correct, we find her reasoning too speculative. Absent the trial court's erroneous application of division (E)(5), it appears that the trial court would have awarded Carmen $2,500.00 as a distributive award, not $7,500.00 as Carmen maintains. Under another scenario, the $7,500.00 award would likely not be justified if the trial court were to accept Carmen's testimony concerning the total value of the firearms. As previously mentioned, Carmen testified that the total value of the firearms on the list was approximately $11,000.00. If the trial court accepted this testimony, then clearly an award of $7,500.00 would be problematic, as it would be an inequitable distribution of the asset. In sum, there is too much uncertainty as to whether the $7,500.00 award is appropriate. As the record stands, there are conceivably several amounts that would be appropriate as an award to Carmen. As such, we cannot conclude that trial court's error is harmless, and remand the matter to the trial court to determine an appropriate award pursuant to R.C. 3105.171(E)(4).

{¶35} Accordingly, we overrule Timothy's first assignment of error with respect to the trial court's finding that he committed financial misconduct, but sustain the assignment of error with respect to the trial court's award of $7,500.00 to Carmen.

*Assignment of Error No. II*

{¶36} In his second assignment of error, Timothy contends that the trial court erred when it ordered him to pay Carmen $2,058.00 after finding him in contempt. Specifically, Timothy argues that the evidence does not support the trial court's award of $2,058.00 to Carmen. We disagree.

{¶37} Contempt of court is a disregard of, or disobedience to, the orders or commands of judicial authority "which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55 (1971), paragraph one of the syllabus. "A finding of civil contempt requires clear and convincing evidence that the alleged contemnor has failed to comply with the court's prior orders." *Ham v. Ham*, 3d Dist. No. 16-09-04, 2009-Ohio-3668, ¶ 30, quoting *Moraine v. Steger Motors, Inc.*, 111 Ohio App.3d 265, 268 (2d Dist. 1996). Clear and convincing evidence is "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere

preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 103-04 (1986).

{¶38} While there must be clear and convincing evidence for the trial court to find an individual in contempt, an appellate court reviews a finding of contempt, including a trial court's imposition of any penalty, for an abuse of discretion. *Whitman v. Whitman*, 3d Dist. No. 5-11-20, 2012-Ohio-405, ¶ 52, citing *Fidler v. Fidler*, 10th Dist. No. 08AP-284, 2008-Ohio-4688, ¶ 11. A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *State v. Boles*, 2d Dist. No. 23037, 2010-Ohio-278, ¶ 16-18, citing *Black's Law Dictionary* 11 (8th Ed.2004). When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *State v. Nagle*, 11th Dist. No. 99-L-089 (June 16, 2000), citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Bearing this authority in mind, we turn our attention to the record before us.

{¶39} As previously mentioned, on April 5, 2011, the trial court issued orders pendente lite that required Timothy, in relevant part, to make payments on the parties' mortgage. On May 27, 2011, Carmen filed a motion for contempt requesting the trial court to find Timothy in contempt for failure to make monthly

payments on the mortgage. On October 6, 2011, a document entitled "Agreement & Stipulations of the Parties" was filed with the trial court. In it, the parties made the following relevant agreements and stipulations:

> 1. [Timothy] to immediately pay the monthly second mortgage payment on the marital residence. [Timothy] shall immediately (by Oct. 7, 2011) pay the Sept[ember] payment. The payment is $552.00 per month. [Timothy] shall make all future monthly payments timely. All arrearages [and] money [paid] by [Carmen] are reserved for final [hearing] as to allocation [and] reimbursement.
>
> 2. Issue of contempt for [Timothy's] failure to pay [second] mortgage is agreed as follows. [Timothy] has failed to pay as ordered. (Docket No. 75, p. 2).

The document containing these agreements and stipulations was signed by the parties and their counsel.

{¶40} During the final hearing, Timothy testified that he did not make three full monthly payments on the mortgage after the trial court issued the orders pendente lite. Timothy explained that he was financially unable to make full payments on the mortgage, but did make payments of $50.00 on those months he was unable to make full payments. On cross-examination, the following relevant exchange occurred as follows:

> Q: And did you post a $50.00 payment in May and a $50.00 payment in July?
>
> A: Yeah.

Q: You understand Carmen was paying the payment on that for all those months?

A: Um-hum.

Q: Correct?

A: I don't know.

Q: You don't have any information one way or the other?

A: I don't - - I know they was behind. Hearing Tr., p. 289.

Timothy further testified that he paid $1,657.00 to make up for the three mortgage payments he could not pay in full. The record, however, contains no evidence corroborating this testimony.

{¶41} Carmen testified that the April mortgage payment was due on the April 20, 2011, and that Timothy did not make the April mortgage payment. Carmen also testified that Timothy did not make full mortgage payments in May, June, or July 2011, but did pay $50.00 towards the mortgage in May and July. Contrary to Timothy's testimony, Carmen testified that she made payments on the mortgage during those months he did not make full payments.

{¶42} Having considered the evidence presented during the hearing and the parties' stipulations, we find that the trial court did not abuse its discretion when it ordered Timothy to pay Carmen $2,058.00. First, there was evidence that Timothy did not make full monthly mortgage payments for April, May, June, and

July 2011.  Since the parties stipulated that the monthly mortgage payment was $552.00, the trial court appropriately determined that Timothy should have paid a total of $2,208.00 towards the mortgage for those months he did not make full payments.  Second, there was evidence that Timothy paid $50.00 towards three of the four mortgage payments he did not pay in full.  Accordingly, the trial court appropriately subtracted $150.00 from $2,208.00, which reduced the total amount to $2,058.00.  Finally, we acknowledge that there is a dispute as to whether Carmen made payments on the mortgage during the months at issue or whether Timothy made up for those missed payments after July 2011.  Clearly, the record contains evidence supporting both versions of facts.  However, in this instance, the trial court found Carmen's testimony more credible, and thus ordered Timothy to pay Carmen $2,058.00.  Since the record contains competent and credible evidence to support the trial court's findings, we cannot say it erred, or otherwise abused its discretion, when it ordered Timothy to pay Carmen $2,058.00.

{¶43} Accordingly, we overrule Timothy's second assignment of error.

*Assignment of Error No. III*

{¶44} In his final assignment of error, Timothy contends that the trial court erred when it designated Carmen as Noah's residential parent for purposes of school placement.  Specifically, Timothy argues that there is no evidence that remaining in the Elgin School District is in Noah's best interests.  We disagree.

**{¶45}** Initially, we note that Timothy does not cite to the record in support of his argument. Since the record contains evidence that supports the trial court's determination, as well as militates against the same, we find Timothy's failure to cite to the record violative of App.R. 16(A)(7), which requires appellants to provide "[a]n argument containing the contentions of the appellant * * * and the reasons in support of the contentions, with citations to the * * * parts of the record on which appellant relies." Although App.R. 12(A)(2) gives us the authority to disregard this deficient assignment of error, we will address its merits in the interests of justice. *See State v. Galbraith*, 3d Dist. No. 9-11-61, 2012-Ohio-5231, ¶ 15.

**{¶46}** Decisions concerning child custody matters rest within the sound discretion of the trial court. *Wallace v. Willoughby*, 3d Dist. No. 17-10-15, 2011-Ohio-3008, ¶ 22, citing *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). "Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court." *Barto v. Barto*, 3d Dist. No. 5-08-14, 2008-Ohio-5538, ¶ 25, quoting *Bechtol v. Bechtol*, 49 Ohio St.3d 21 (1990), syllabus. Accordingly, an abuse of discretion must be found in order to reverse the trial court's award of child custody. *Id*., citing *Masters v. Masters*, 69 Ohio St.3d 83, 85 (1994).

**{¶47}** As previously mentioned, a trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *Boles*, 2010-Ohio-278, at ¶ 16-18, citing *Black's Law Dictionary* 11 (8th Ed.2004). When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Nagle*, 11th Dist. No. 99-L-089, citing *Blakemore*, 5 Ohio St.3d at 219.

**{¶48}** Where neither party files a pleading or motion requesting shared parenting in accordance with R.C. 3109.04(G), the trial court shall do the following:

> * * * the court, in a manner consistent with the best interest of the children, shall allocate the parental rights and responsibilities for the care of the children primarily to one of the parents, designate that parent as the residential parent and the legal custodian of the child, and divide between the parents the other rights and responsibilities for the care of the children, including, but not limited to, the responsibility to provide support for the children and the right of the parent who is not the residential parent to have continuing contact with the children. R.C. 3109.04(A)(1); *See Frey v. Frey*, 3d Dist. No. 5-06-36, 2007-Ohio-2991, ¶ 28.

In making an allocation of parenting rights, the trial court must consider the best interests of the children. R.C. 3109.04(B)(1). In determining the children's best interests, the trial court is required to consider all relevant factors, including those specifically enumerated under R.C. 3109.04(F)(1). Accordingly, we must examine the record to determine whether the trial court considered all of the

-24-

necessary factors listed in R.C. 3109.04(F)(1), and whether there is competent, credible evidence supporting the trial court's determination that designating Carmen as Noah's residential parent for the purpose of school placement was in Noah's best interest.

{¶49} Upon review of the record, we find that the trial court considered the requisite factors listed in R.C. 3109.04(F)(1), and that there was competent, credible evidence that designating Carmen as Noah's residential parent for the purpose of school placement was in Noah's best interest.

{¶50} It appears that the trial court designated Carmen as Noah's residential parent for the purpose of school placement to ensure that Noah had some stability in his life. The trial court found, and the record reveals, that "[t]he turmoil of the divorce and the uncertainty of the outcome have had a negative impact on [Noah]." Judgment Entry, p. 5. The only constant in Noah's life was school. Indeed, the record reveals that Noah has attended Elgin schools his entire life, is well adjusted to the school environment, has friends through school, and participates in school sponsored extracurricular activities. In light of the turmoil caused by the parties' divorce, it is reasonable to conclude that Noah's continued attendance in Elgin schools is in his best interest. Since Timothy lives outside of the Elgin school district, the trial court designated Carmen as Noah's residential parent for the purpose of school placement. Under the circumstances of this

matter, we find that this limited designation is reasonable, as it ensures that Noah will continue to attend Elgin schools and consequently have some stability in his life. Consequently, we find Timothy's argument unavailing.

{¶51} Accordingly, we overrule Timothy's third assignment of error.

{¶52} Having found no error prejudicial to Timothy, in the particulars assigned and argued in his second and third assignments of error, but having found error prejudicial to Timothy, in the particulars assigned and argued in his first assignment of error, we affirm in part and reverse in part the trial court's judgment and remand for further proceedings consistent with this opinion.

*Judgment Affirmed in Part,*
*Reversed in Part and*
*Cause Remanded*

**PRESTON, P.J. and SHAW, J., concur.**

**/jlr**